JESSE WATSON, as Administrator of the Estate of EARL J. WATSON, Deceased, Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 32149.)

Court of Claims, April 21, 1955.

*Harold Jacobs* and *Clifford H. Searl* for claimant.

*Jacob K. Javits, Attorney-General* (*Edward R. Murphy* of counsel), for defendant.

MAJOR, J. The claimant seeks to recover damages for the alleged wrongful death of his intestate, Earl J. Watson, by drowning in Oneida Lake at Sylvan Beach, New York, on June 20, 1953, and alleges negligence on the part of the State of New York.

Letters of administration limited to the prosecution of this claim upon the estate of said decedent were issued to the claimant herein by the Surrogate of Madison County on August 5, 1953. This claim was timely filed and has not been assigned nor submitted to any other court or tribunal for audit or determination.

During the afternoon of Saturday, June 20, 1953, the decedent and his friend, Milton Lighthall, met in Oneida, New York, and after having beer in a couple of places, they drove to Sylvan Beach, a summer colony located on the east shore of Oneida Lake. They walked around and at about 6:00 P.M., arrived at a combination breakwater-pier which divides the Barge Canal channel and Oneida Lake — the canal being on the south and the lake on the north.

This breakwater built and maintained by the State, adjoins the Barge Canal pier and begins a short distance west of Sylvan Beach lighthouse and extends westerly into Oneida Lake for a distance of about 2,312 feet. It is 22 feet wide with a rounded concrete cap or crown constructed so that the edges were lower than the center. There is a warning light at its extreme westerly end from which point the breakwater extends northerly for about 800 feet and is formed by large rocks and stones piled and dumped irregularly and promiscuously.

The rounded concrete top of the breakwater involved herein on the day of the accident was covered in large sections by wet moss, debris, slime, seaweed, and its entire surface was wet. It was broken, cracked, sunken and uneven in many places and had numerous holes in its surface. A line of posts studded the structure, part way out, spaced off at intervals along the canal side to which boats could be tied, and there was a continuous triple line of spikes or other metal projecting through the concrete cap along the center. These hazards, dangers, defects and obstructions were all plainly visible to any prudent person.

The Sylvan Beach recreation area and bathing beach are located some distance north of the breakwater and the scene of the accident was not a part of, nor immediately adjacent to the bathing beach or recreation area. There were no signs on the pier or breakwater either inviting or forbidding the general public to enter, or warning signs advising them of the existing dangers.

On the day and at the time of the accident, it was stormy and windy. The waters were rough, the waves splashed over the breakwater and caused it to become slippery. The decedent and his friend, Milton Lighthall, walked out on the breakwater toward the rock portion thereof and when they came to the point where the westerly end of the breakwater dropped down, both men rolled up their pant legs a few inches and took off their shoes and socks to keep from getting wet. Then they proceeded, carrying their shoes and socks in their hands. Upon returning, Lighthall was in front and decedent was following about twenty

feet behind. When they reached the drop in the breakwater, Lighthall heard the decedent scream for help, and turning around, saw him splashing in the water off the north side of the breakwater. Claimant's intestate was removed from the water too late to be revived.

Decedent was survived by his father, Jesse Watson, age sixty-eight, and his mother, Lavina Watson, age sixty-one, to whose support he contributed about $30 per week. Decedent's funeral expenses were $519, and his earnings for five months previous to his death were $1,048.66.

A pier is a structure to afford convenient passage for persons and property to and from vessels along the sides thereof. (Black's Law Dictionary.) A breakwater is a structure for breaking the force of waves. (Webster's New International Dictionary [2d ed.].)

In this instance, the evidence clearly indicates that this structure was not a thoroughfare. It was built to break the force of the stormy waves of Oneida Lake and as an aid to vessels entering and leaving the Barge Canal. The decedent was not there for canal purposes nor for the purposes for which it was constructed and maintained.

Even though this breakwater-pier was used by people from time to time for sightseeing, photography and fishing over a long period of time, it cannot be said that the good nature of the owner or its representative can ripen into a right. (*Vaughan* v. *Transit Development Co.*, 222 N. Y. 79.) It was not constructed nor maintained for such purposes. The most that can be said in behalf of decedent is that he was a licensee. In such case, the State owed him only the duty of abstaining from affirmative acts of negligence, or not to intentionally cause injury to him. The evidence does not show an affirmative act of negligence on the part of the State, but on the contrary the decedent as a prudent man could or should readily see, and is chargeable with knowledge of the present and impending dangers and hazards involved in such a walk out and back on such structure. He unnecessarily proceeded in the face of a known risk, for which he is guilty of negligence.

The court finds that the State is not chargeable with negligence which caused the accident and death of decedent, but that decedent was guilty of contributory negligence. (*Pendino* v. *State of New York*, 196 Misc. 184; *Panunzio* v. *State of New York*, 266 App. Div. 9.)

The claim is dismissed and judgment is directed accordingly.

The foregoing constitutes the written and signed decision of this court upon which judgment may be entered. (Civ. Prac. Act, § 440.)

Let judgment be entered accordingly.